STATE OF MINNESOTA

IN SUPREME COURT

A23-0863

Court of Appeals                                                    Thissen, J.
                                Dissenting, Hudson, C.J., Procaccini, J.
                                            Took no part, Gaïtas, J.

State of Minnesota,

                Respondent,

vs.                                                    Filed: August 6, 2025
                                            Office of Appellate Courts

Logan Hunter Vagle,

                Appellant.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Brad Johnson, Anoka County Attorney, Kelsey R. Kelley, Assistant County Attorney, Anoka, Minnesota, for respondent.

Anders J. Erickson, Johnson Erickson Criminal Defense, Minneapolis, Minnesota, for appellant.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Megan M. Walsh, Maria Aquino-Duran, Special Assistant Attorneys General, Wyatt Lutenbacher, Chad Nowlan, Certified Student Attorneys and Special Assistant Attorneys General, Gun Violence Prevention Law Clinic, University of Minnesota Law School, Minneapolis, Minnesota, for amicus curiae Minnesota Attorney General.

_____

1

SYLLABUS

Minnesota Statutes section 609.667(3) (2024) criminalizes the possession of a firearm without a serial number only when the firearm must have a serial number under federal law.

Reversed and remanded.

OPINION

THISSEN, Justice.

Appellant Logan Hunter Vagle was charged with possession of a firearm that is not identified by a serial number, in violation of Minnesota Statutes section 609.667(3) (2024). Vagle assembled the firearm—a pistol—himself from parts he purchased. The firearm did not have a serial number. Minnesota has not established an independent firearm serial number regime, and federal law does not require that Vagle's pistol have a serial number. The question before us is whether Vagle's possession of the firearm violated section 609.667(3). We conclude that section 609.667(3) criminalizes the possession of a firearm that is not identified by a serial number only if federal law requires that a serial number be stamped, engraved, cast, or otherwise conspicuously placed on the firearm. Because federal law does not require a serial number on the firearm that Vagle possessed, we reverse.

**FACTS**

On February 14, 2022, a Minnesota State Patrol trooper responded to the scene of a single vehicle rollover crash near Interstate 694 and Highway 65 in Fridley. Upon arrival, the trooper found the vehicle resting on its roof in a ditch and saw a black AR-style

2

magazine inside. The driver, Vagle, confirmed that he had a pistol in the vehicle and that he did not have a permit to carry a firearm. While searching the vehicle, the trooper found a black 9-millimeter Glock 19 pistol without a serial number. This type of weapon is a ghost gun or privately made firearm.[1]

The next day, the State charged Vagle with felony possession of a firearm without a serial number in violation of Minnesota Statutes section 609.667(3) and carrying a pistol without a permit in violation of Minnesota Statutes section 624.714, subdivision 1a (2024). Vagle moved to dismiss the section 609.667(3) charge for lack of probable cause. At a contested omnibus hearing, the parties agreed to file written memoranda and submit the motion to the district court based solely on documentary exhibits. In his memorandum to the district court, Vagle clarified that he was not challenging the constitutionality of section 609.667(3).

The district court granted Vagle's motion to dismiss the charge. The district court determined that the Glock 19 was a firearm under Minnesota law, it was not identified by a serial number, and Vagle knowingly possessed it at the time of the incident. The district court then—notwithstanding Vagle's clarification he was not challenging the constitutionality of section 609.667(3)—took up the issue sua sponte, declared section 609.667 unconstitutionally vague as applied, and dismissed the charge.

---

[1] As relevant to this case, a "ghost gun" is "[a] homemade or self-assembled firearm with no recognized serial number." *Ghost Gun*, *Black's Law Dictionary* (12th ed. 2024).

3

The State filed a pretrial appeal of the district court order.[2] The court of appeals reversed and remanded. *State v. Vagle*, 999 N.W.2d 909 (Minn. App. 2023). Relevant to the question before us, the court of appeals rejected Vagle's argument that section 609.667(3) is limited to firearms that are required to have a serial number under federal law.[3] Rather, the court of appeals determined that section 609.667(3)'s prohibition on possession of a firearm that is not identified by a serial number "plainly applies to *any* firearm." *Id.* at 914. Based on this interpretation, the court of appeals rejected Vagle's constitutional vagueness argument and concluded that the State's charge against Vagle was supported by probable cause.

We granted Vagle's petition for review.[4]

---

[2] Because this is a pretrial appeal by the State, the State must prove that the district court's order "will have a 'critical impact' on the [S]tate's ability to prosecute the defendant successfully and that the order constituted error." *State v. Barrett*, 694 N.W.2d 783, 787 (Minn. 2005) (citation omitted) (internal quotation marks omitted); *see* Minn. R. Crim. P. 28.04, subd. 2(2)(b). Here, the State claims the district court erred in its interpretation of section 609.667(3) and, because that interpretation led to the charge being dismissed, there is no doubt the order critically impacted the State's ability to prosecute the case. *See State v. Serbus*, 957 N.W.2d 84, 87 (Minn. 2021). The merits of this pretrial appeal are properly before us.

[3] The State argued to the court of appeals that the district court erred when it decided the constitutionality of section 609.667 sua sponte. The court of appeals considered whether it is reversible error for a district court to address issues of constitutionality sua sponte, looking to our precedent. *Vagle*, 999 N.W.2d at 912 n.3 (citing cases). It reached the constitutional claim because the district court "ruled on the merits and both parties have fully briefed the issues." *Id*.

[4] We denied a motion to intervene by the Attorney General but granted his alternative motion to file a brief as amicus curiae in support of the State.

4

## ANALYSIS

Vagle's primary argument is that his charge must be dismissed because, as a matter of statutory interpretation, section 609.667(3) criminalizes possession of a firearm lacking a serial number only if federal law requires that the firearm have a serial number. He raises the issue of constitutional vagueness only in the alternative. "It is well-settled law that courts should not reach constitutional issues if matters can be resolved otherwise." *In re Senty-Haugen*, 583 N.W.2d 266, 269 n.3 (Minn. 1998). We thus address the issues in the manner Vagle presents them: starting—and ending, if possible—with the statutory interpretation issue.[5]

Section 609.667 provides:

> Whoever commits any of the following acts may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both:

---

[5] Vagle submitted a motion to strike footnote 51 of the State's responsive brief which argued, once again, that the district court improperly ruled sua sponte on the constitutionality of section 609.667(3)—an issue the court of appeals did not resolve in the State's favor. *See supra* note 2. When Vagle petitioned this court for review of the court of appeals' decision the State did not file a cross-petition or conditional cross-petition for review of this issue. Although parties generally forfeit arguments by not raising them in a petition, cross-petition, or conditional cross-petition for review, *see State v. Myhre*, 875 N.W.2d 799, 806 (Minn. 2016), we "*may* permit a party, without filing a cross-petition, to defend a decision . . . on any ground that the law and record permit that would not expand the relief that has been granted to the party." Minn. R. Crim. P. 29.04, subd. 6 (emphasis added). Inasmuch as this is a pretrial appeal, Vagle had no opportunity to address this argument. *See id.*, subd. 10 (providing for appellant and respondent briefs, but no reply briefing, in a pretrial criminal appeal). Because Vagle had no opportunity to provide a substantive response to the State's argument, presented in footnote 51 of its brief, we grant Vagle's motion to strike. Additionally, because we reverse on statutory interpretation grounds, we do not reach any of the constitutional arguments on section 609.667(3).

(1) obliterates, removes, changes, or alters the serial number or other identification of a firearm;

(2) receives or possesses a firearm, the serial number or other identification of which has been obliterated, removed, changed, or altered; or

(3) receives or possesses a firearm that is not identified by a serial number.

As used in this section, "serial number or other identification" means the serial number and other information required under United States Code, title 26, section 5842, for the identification of firearms.

Minn. Stat. § 609.667 (2024).

We are called upon to interpret section 609.667—which expressly references federal law—and determine whether the crime set forth in section 609.667(3) is limited to possession of a firearm lacking a serial number required under federal law or, alternatively, whether section 609.667(3) criminalizes the possession of any firearm that lacks a serial number even if federal law does not otherwise require one. Considering section 609.667's reference to federal law, we begin by providing some background on federal law regarding firearm serial number requirements before turning to the central question of whether section 609.667(3) makes it a crime to possess a firearm without a serial number that is not required to have one under federal law.

A.

Before we address the language of section 609.667(3), it is important to provide some brief background on federal firearm serial number requirements. We do so, in part, because Minnesota does not have a general independent scheme requiring serial numbers to identify firearms and the statute itself references federal law.

6

In 1994, when the Legislature enacted section 609.667, *see* Act of May 10, 1994, ch. 636, art. 3, § 22, 1994 Minn. Laws 2170, 2240 (codified at Minn. Stat. § 609.667 (2024)), there were two federal provisions requiring serial numbers on firearms. This remains true today.

The first is the 1968 amendment to the National Firearms Act found in Title 26 of the United States Code—the Internal Revenue Code—which requires:

> Each manufacturer and importer and anyone making a firearm shall identify each firearm . . . manufactured, imported, or made by a serial number which may not be readily removed, obliterated, or altered, the name of the manufacturer, importer, or maker, and such other identification as the Secretary may by regulations prescribe.

26 U.S.C. § 5842(a).[6] The Treasury Department maintains a central registry of identification information related to National Firearms Act firearms. 26 U.S.C. § 5841.

---

[6] In 1934, when the National Firearms Act was initially enacted, it did not use the term "serial number." *See* National Firearms Act, Pub. L. No. 73-474, 48 Stat. 1236 (1934) (codified as amended at 26 U.S.C. §§ 5801–72). Instead, the act initially required that certain specified firearms be registered. Under the National Firearms Act as it existed in 1934, "every importer, manufacturer, and dealer" of National Firearms Act firearms was required to register as such and pay an annual fee, *id.* at § 2(a); all transfers of firearms were to be recorded with the government and a transferor was to pay a $200 transfer tax, *id.* at §§ 3–4; and anyone, including individuals who did not qualify as importers, manufacturers, and dealers, in possession of a National Firearms Act firearm was required to register the firearm within 60 days of the act's enactment, *id.* at § 5(a). Registering a firearm under the National Firearms Act included reporting "the number or other mark identifying such firearm" if one existed. *Id.* at § 5(a). Additionally, any new weapon made by a manufacturer or imported after 1934 was required to display a "number or other identification mark." *Id.* at § 8(a). These "marks" were likely precursors to serial numbers but were not the standardized serial numbers seen today. *Compare id.* (stating that firearms be identified with marks approved and placed as the Commissioner of Internal Revenue approved), *with* 27 C.F.R. § 479.102(a) (requiring serial numbers be engraved, cast, stamped, or otherwise conspicuously placed on a firearm's frame or receiver and unique among the manufacturer or importer's firearms).

The final paragraph of Minn. Stat. § 609.667 expressly references this serial number provision in the National Firearms Act.

The second federal provision was enacted as part of the Gun Control Act of 1968. Pub. L. No. 90–618, 82 Stat. 1213, 1223 (1968) (codified as amended at 18 U.S.C. §§ 921–934). Section 923(i) in Title 18 of the United States Code—the federal criminal code—requires that "licensed importers and licensed manufacturers shall identify by means of a serial number engraved or cast on the receiver or frame of the weapon, in such manner as the Attorney General shall by regulations prescribe, each firearm imported or manufactured by such importer or manufacturer." 18 U.S.C. § 923(i); *see also* 27 C.F.R. § 478.92(a)(1) (providing additional details on these statutory requirements). Minnesota Statutes section 609.667 does *not* expressly reference this provision. Federal regulations promulgated under Title 18 require a licensee (including a licensed dealer) who acquires a "privately made firearm" that lacks a serial number to add a serial number within a defined period. 27 C.F.R. § 478.92(a)(2).

Although both these statutes require serial numbers on firearms, they differ in a few ways. First, their definitions of "firearm" are distinct. The National Firearms Act definition is substantially narrower than the definition in the Gun Control Act, meaning that fewer types of firearms are covered by the National Firearms Act. *Compare* 26 U.S.C. § 5845(a), (e), *with* 18 U.S.C. § 921(a)(3). A "firearm" under the Gun Control Act broadly includes, for example, "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive," explicitly excepting from the definition only an "antique firearm." 18 U.S.C. § 921(a)(3). The

8

National Firearms Act, in contrast—while also expressly excepting certain "antique firearm[s]"—enumerates more specifically which particular weapons fall within its scope. 26 U.S.C. § 5845. Firearms covered by the National Firearms Act include machineguns (including weapons converted into machineguns), silencers, rocket launchers, grenades, short-barreled shotguns and rifles with an overall length less than 26 inches or with a barrel or barrels under 18 inches in length for shotguns and 16 inches for rifles, and other weapons such as pen guns, umbrella guns, and certain pistols and revolvers having smoothbore barrels designed or redesigned to fire shotgun shells. *Id.*; *see also* U.S. Dep't of Just. Bureau of Alcohol, Tobacco, Firearms and Explosives, National Firearms Act Handbook 7–9, ch. 2, § 2.1.5 (2009). This distinction is particularly relevant because non-National Firearms Act firearms—like traditional hunting rifles and shotguns—were not required to have engraved serial numbers until 1968, when the Gun Control Act was enacted. To this day, many rifles and other firearms Minnesotans own which were manufactured before 1968 do not have—and are not required to have—serial numbers under federal law.

Second, the National Firearms Act requires a person who puts together, alters, or otherwise produces a National Firearms Act firearm—even if the person is not engaged in the business of manufacturing firearms—to include a serial number. 26 U.S.C. § 5842; *see also* 26 U.S.C. § 5845(i) (defining "importer" to mean "any person who is engaged in the business of importing or bringing firearms into the United States"). The Gun Control Act requires only licensed importers, manufacturers, and dealers to include serial numbers on their firearms; it does not require serial numbers for privately made firearms that do not qualify as firearms under the National Firearms Act definition. 18 U.S.C. § 923(i);

9

27 C.F.R. § 478.92. Under federal regulations adopted in 2022, however, parts in manufactured weapons part kits used to build firearms must now include serial numbers. *Bondi v. VanDerStok*, 604 U.S. ___, 145 S. Ct. 857, 876 (2025) (affirming the Bureau of Alcohol, Tobacco, Firearms, and Explosives' (ATF's) regulation requiring weapons part kits commonly used to assemble ghost guns to include serial numbers on the parts sold).[7]

Third, National Firearms Act firearms are subject to registration in the National Firearms Registration and Transfer Record (NFRTR). *See* 26 U.S.C. § 5841 (stating that the NFRTR is the "central registry of all [National Firearms Act] firearms in the United States which are not in the possession or under the control of the United States [government]"). The Gun Control Act requires specified non-National Firearms Act firearms to have serial numbers, but those serial numbers are not kept in a central repository. Nonetheless, manufacturers, importers, and licensed dealers who, under federal law, must place serial numbers on firearms must also keep a record of those serial numbers. *See* 27 C.F.R. §§ 478.121–.134 (detailing recordkeeping regulations under the Gun Control Act); 27 C.F.R. §§ 479.101–.105 (outlining the registration process for National Firearms Act firearms); 27 C.F.R. § 479.131 (outlining requirements for National Firearms Act

---

[7] In district court, Vagle submitted as an exhibit receipts dated between January 4 and January 7, 2021, which show he bought the firearm parts needed to fully assemble a Glock 19. Because Vagle purchased his parts in 2021, there were not yet federal regulations in place requiring parts in weapons part kits to have serial numbers stamped, engraved, cast, or otherwise conspicuously placed on them. *See Bondi*, 604 U.S. at ___, 145 S. Ct. at 864 (noting that the ATF adopted its regulation on weapons part kits in 2022).

firearms recordkeeping).[8]  These requirements create a paper trail which may allow police to trace a firearm (albeit imperfectly in some cases) to an owner.

## B.

With this background in mind, we turn to the central question: Does section 609.667(3) make it a crime to possess a firearm without a serial number that is not required to have one under federal law?  This is a question of statutory interpretation that we review de novo.  *State v. Bee*, 17 N.W.3d 150, 153 (Minn. 2025).

We start with the text of section 609.667 and assess whether the language of the statute plainly answers the question.  *Bee*, 17 N.W.3d at 153 (stating that where the text of a statute is susceptible to only one reasonable interpretation, we apply that meaning).  Again, section 609.667 provides:

> Whoever commits any of the following acts may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both:
>
> (1) obliterates, removes, changes, or alters the serial number or other identification of a firearm;
>
> (2) receives or possesses a firearm, the serial number or other identification of which has been obliterated, removed, changed, or altered; or
>
> (3) receives or possesses a firearm that is not identified by a serial number.

---

[8]    State laws vary regarding which weapons require specific paperwork when transferred between unlicensed owners residing in the same state who are conducting a private sale or transfer.  For example, in Minnesota, a private sale of a pistol or military-style assault weapon requires both the transferee and transferor to retain records of the transfer for 10 years, unless the individuals are exempt under an enumerated exception.  Minn. Stat. § 624.7134, subds. 4, 7 (2024).

> As used in this section, "serial number or other identification" means the serial number and other information required under United States Code, title 26, section 5842, for the identification of firearms.

Minn. Stat. § 609.667. Subparts (1) and (2) of section 609.667 both criminalize acts related to "the serial number or other identification," which is expressly defined with reference to 26 U.S.C. § 5842's—the National Firearms Act's—requirements. For its part, section 609.667(3), the section at issue here, criminalizes the receipt or possession of "a firearm that is not identified by a serial number," with no reference to "other identification."

The State argues that it is a crime under section 609.667(3) to possess a firearm without a serial number even if federal law does not require that the firearm have a serial number. The text of section 609.667(3) does not qualify the term "serial number" in any way and does not expressly limit the term to serial numbers required under federal law. Under the State's interpretation, a serial number need not be connected to any documents that authorities can access to track a firearm's owner or previous owner.

We are not convinced. First, the State offers no reasonable explanation of what the term "serial number," as used in the statute, means if it is not referring to the firearm serial number required under federal law. As noted, unlike other states, Minnesota has no independent state framework for assigning serial numbers to firearms. *See, e.g.*, Cal. Penal Code §§ 29180–29185 (West 2025) (governing firearms marks and serial numbers and requiring firearm manufacturers, assemblers, and owners to apply for serial numbers with California's Department of Justice for their firearms or firearm precursor parts manufactured, assembled, or owned which do not have "valid state or federal serial

number[s] or mark[s] of identification imprinted on the frame[s] or receiver[s]"); Conn. Gen. Stat. §§ 29-36a to -36b, 53-206j (2025) (directing that "the [Connecticut] Department of Emergency Services and Public Protection, in consultation with the [ATF] as needed, shall develop and maintain a system to distribute a unique serial number or other mark of identification" to manufacturers of firearms and transfers, sales, and deliveries of unfinished firearm parts); Colo. Rev. Stat. § 18-12-111.5 (2025) (criminalizing possessing, purchasing, transporting, and receiving firearms and unfinished frames or receivers unless they are "required by federal law to be imprinted with a serial number and ha[ve] been imprinted with a serial number by a federal firearms licensee pursuant to federal law" and setting a deadline to bring post-1968 firearms into compliance). The State simply asserts that the term "serial number" is plain on its face and "does not mirror federal law." Yet by failing to provide any alternate meaning for a serial number under the Minnesota Statutes, the State fails to provide a reasonable interpretation of "serial number" under section 609.667(3).

The dissent agrees with the premise of the State's assertion and seeks to fill in the gaps. In doing so, the dissent relies on generic dictionary definitions—that is, the dissent asserts that a serial number for purposes of section 609.667(3) is any number indicating a place in a series and used as a means of identification.[9] But this definition is too broad and

---

[9] The definitions the dissent relies on are: *Merriam-Webster's Collegiate Dictionary* 1136 (11th ed. 2003) (defining "serial number" as "a number indicating place in a series and used as a means of identification"); *The American Heritage Dictionary of the English Language* 1589 (4th ed. 2000) (defining "serial number" as "[a] number that is one of a series and is used for identification, as of a machine, weapon, or motor vehicle"); *Serial*

13

amorphous to be useful in the context of the statute. *See State v. Scovel*, 916 N.W.2d 550, 555 (Minn. 2018) (stating that we may "set aside dictionary definitions when context makes clear that dictionary definitions may not fit").

By adopting the dictionary definition of the term "serial number" untethered to any additional standard, a person could seemingly satisfy the requirements of section 609.667(3) and avoid criminal liability by using a marker to write numbers on a firearm. The resulting number, however—even if it is unique and thus distinguishes the firearm—is disconnected from a serial number's tracing function, intended to enable law enforcement to connect an owner to a firearm; it offers no basis for "identifying" a firearm in any meaningful way. *See* Minn. Stat. § 609.667(3) (stating that a serial number *identifies* a firearm).[10] When a number—even a unique number—is simply placed on a weapon without creating any paper trail, the individual it belongs to—that is, the individual law enforcement may need to identify and locate—remains untraceable.[11] In other words, relying on the generic dictionary definition of "serial number" is unreasonable.

_____

*Number*, *Black's Law Dictionary* 1646 (12th ed. 2024) ("A number assigned to a specific thing, esp. a product, to identify it from other things of the same kind.").

[10]    Indeed, it is possible that a random number a gun owner writes on a firearm and which is unconnected from a larger set of numbers is not a serial number under the dictionary definitions offered by the dissent, because that singular random number would not be part of a series.

[11]    As noted above, National Firearms Act firearms are included in the NFRTR. There is no central repository of serial numbers for non-National Firearms Act firearms, but manufacturers, importers, and licensed dealers who, under federal law, must place serial numbers on firearms, must also keep a record of those serial numbers. We acknowledge that this is not a perfect system for law enforcement to trace firearms, but it does provide a defined universe of places where law enforcement can reliably begin an investigation—for

Rather, we conclude that the term "serial number" in the statute has a specialized, technical meaning. *State v. Bradley*, 4 N.W.3d 105, 112 (Minn. 2024) (stating that " 'technical words and phrases and such others as have acquired a special meaning . . . are construed according to such special meaning' " rather than according to their ordinary meaning (quoting Minn. Stat. § 645.08(1) (2024))). When deciding "whether words in a statute have a technical meaning or an ordinary meaning, we look at the context in which the phrase appears." *Id.* Section 609.667 is a *firearms* statute. It criminalizes, among other things, receiving or possessing a firearm without a serial number—and thus assists the State to track and identify owners of firearms used in crimes. *See* Minn. Stat. § 609.667(3) (indicating that a firearm serial number is intended to identify a gun). The statute was passed in 1994 against the backdrop of a wide-reaching federal statutory scheme (and in the absence of an alternative state scheme) for marking certain firearms with identifying serial numbers. *Cf. Bradley*, 4 N.W.3d at 112–13 (concluding the term "degree" as used in criminal law has a technical meaning in light of the term's historic use in the criminal code); *see generally United States v. Biswell*, 406 U.S. 311, 315–16 (1972) (discussing the significance of federal firearms regulation). Minnesota's statute criminalizing possession of a firearm without a serial number references the federal scheme. Minn. Stat. § 609.667.

example, the manufacturer when the gun identifies the manufacturer, or to licensed dealers in the area.

The dissent claims that a serial number an owner writes on a firearm would allow law enforcement to trace the firearm as it moves through the stream of commerce or if it is used in the commission of a crime. We do not understand how that can be if the serial number is not recorded somewhere known—e.g., with a manufacturer, importer, or dealer record—that would provide law enforcement with a predictable starting point to begin a search.

15

Accordingly, we conclude—consistent with Vagle's argument—that the term "serial number" as used in section 609.667(3) means a serial number required under federal law.

The dissent argues that this conclusion cannot be correct. It observes that although the Legislature expressly referred to federal law when defining the crimes set forth in section 609.667(1) and (2), it did not do so in section 609.667(3). In clauses (1) and (2), the Legislature criminalized obliterating, removing, changing, or altering the "serial number or other identification of a firearm," and receiving or possessing a firearm on which the "serial number or other identification" has been obliterated, removed, changed, or altered. In contrast, in clause (3), the Legislature prohibited possessing a firearm that was never "identified by a serial number" in the first place. Further, section 609.667 defines the phrase " 'serial number or other identification' " with reference to the National Firearms Act, Minn. Stat. § 609.667 (stating that "[a]s used in this section, 'serial number or other identification' means the serial number and other information required under United States Code, title 26, section 5842"), but does not define the phrase "identified by a serial number" in clause (3). Accordingly, the argument runs, the fact that the Legislature referred to federal law in section 609.667(1) and (2), but not section 609.667(3), means that the Legislature intended section 609.667(3) to refer to something different from the federal serial number requirement.

This analysis falls into the trap of reading words in isolation rather than in context. The fact that the Legislature defined the phrase "serial number or other identification" in section 609.667(1) and (2) with reference to a specific federal law simply does not compel the conclusion that "identified by a serial number" in section 609.667(3) cannot also refer

16

to a serial number required by federal law. *See State v. Thompson*, 950 N.W.2d 65, 68–70 (Minn. 2020) (stating that canons of construction must yield to context and holding that the term "fictitious" used in Minnesota Statutes section 609.506 may overlap with the term "false" used in the same statute because the provision using those terms describes different behavior). This reasoning is particularly compelling here because, as noted above, the federal firearm serial number is the only firearm serial number in effect in Minnesota.

Further, there are reasonable readings of the statute that account for the textual differences between clauses (1), (2), and (3). First, recall that there are two circumstances under which a serial number is required under federal law. The first is when a firearm is subject to the National Firearms Act serial number provision, 26 U.S.C. § 5842, which requires manufacturers, importers, and makers to place serial numbers on a narrow set of firearms. By its express terms, section 609.667(1) only makes it a crime to obliterate, remove, change, or alter the serial number or other identification of *a National Firearms Act firearm*. Similarly, section 609.667(2) makes it a crime to receive or possess a *National Firearms Act firearm*, the serial number or other identification of which has been obliterated, removed, changed, or altered. Under this reading, section 609.667(3), which does *not* refer to the National Firearms Act definition of "serial number or other identification," makes it a crime to receive or possess a firearm not identified by a "serial number" required under *either* the National Firearms Act, 26 U.S.C. § 5842, *or* the Gun

Control Act, 18 U.S.C. § 923(i). Clause (3), then, covers a broader range of firearms than clauses (1) and (2).

A second reasonable reading is that the Legislature wanted to emphasize that the obliteration prohibitions in section 609.667(1) and (2) include not only serial numbers— the meaning of which is easily understood under federal law—but also the other types of identification required for certain firearms under federal law. "Other identification" is not clearly understandable without specific reference to federal law. Under section 609.667(3), the phrase "other identification" is unnecessary because the Legislature *only* intended to criminalize absence of a serial number required under federal law and *not* the absence of "other identification." We need not resolve all of these issues at this time. What is clear is that the dissent's interpretation is not required and that Vagle cannot be convicted under section 609.667(3) for possessing a firearm without a serial number when none was required under federal law.

For all the reasons identified, the language of the statute, appropriately considered in context, dictates that section 609.667(3) criminalizes possession of a firearm without a serial number only when the firearm must have a serial number under federal law.

C.

Even if we accept, for the sake of argument, that the State and dissent's interpretation of section 609.667(3) is also reasonable, we find that relevant non-textual clues also compel our conclusion. *Wocelka v. State*, 9 N.W.3d 390, 399 (Minn. 2024) (stating that where more than one interpretation of the text is reasonable, we may "turn to other non-textual clues to resolve the ambiguity").

18

First, clues gleaned from section 609.667's legislative history tell us that the Legislature did not intend to criminalize possession of firearms that did not require serial numbers under federal law. In a Minnesota House Judiciary Committee hearing, the author of the bill proposing section 609.667 explained that its purpose was to give *state authorities* the power to criminally enforce *federal laws* on firearm serial numbers and other identification. Hearing on H.F. 2437, H. Comm. Jud., 78th Minn. Leg., Mar. 11, 1994, (audio file) at 00:55:00–56:34 (comments of Rep. Perlt, House author of the bill).[12] Further, when asked by a committee member whether the bill would impact transferring pre-1968 firearms that did not have a serial number—something the State's reading of section 609.667(3) would plainly do—the author answered "No." Hearing on H.F. 2437, H. Comm. Jud., 78th Minn. Leg., Mar. 11, 1994, (audio file) at 1:00:55–1:01:17 (comments of Rep. Perlt, House author of the bill). An agent from the Minnesota Bureau of Criminal Apprehension also testified before the committee in support of passing section 609.667,

---

[12] The author of the bill testified as follows:

> Mr. Chairman, . . . if [House File 2437] is passed, it will be added to the omnibus crime bill, [it] will now make it a state law against the removal or obliteration of serial numbers or identifying marks from the manufacturer, firearms. We presently have a federal law that this law was taken from which controls this, however, it's felt that for prosecution purposes, when a firearm might be confiscated as a result of a crime, it will, instead of having to be prosecuted through federal authorities, it could be handled under state law. So that's the reason we're asking that this law be added to the, added to the list.

Hearing on H.F. 2437, H. Comm. Jud., 78th Minn. Leg., Mar. 11, 1994, (audio file) at 00:55:00–56:22 (comments of Rep. Perlt, House author of the bill).

opining that it filled a necessary gap to align Minnesota law with federal gun control law at the time.[13]

We also note that since the enactment of section 609.667(3) in 1994, the statute has not been understood to criminalize receiving or possessing firearms on which serial numbers are not required by federal law. Indeed, as recently as 2022, the State of Minnesota itself sold firearms that did not have serial numbers. *See Minn. Dep't of Nat. Res.*, *DNR Plans Auctions of Confiscated Hunting and Fishing Equipment* (2022) [opinion attachment]; *January Firearms*, Hiller Auction Inc.,

---

[13] The agent testified to the following:

> [T]he present law does not really provide for conviction or charging persons who possess or alter the serial numbers on firearms that they may have, weapons that could be stolen and the serial number is changed. There is no real provision in state law to deal with that, only provision under U.S. Code 26, federal code dealing with the National Firearms Act. This law brings us in line with what that act imposes and goes beyond the act because, under federal law, no firearm was required to have a serial number manufactured prior to 1968. And this bill, this provision will allow for not only the changing of serial numbers but under the federal provision [inaudible] the manufacturer, importer, the make of the weapons, and serial numbers if they are on the weapon. We are in support of this.

Hearing on H.F. 2437, H. Comm. Jud., 78th Minn. Leg., Mar. 11, 1994, (audio file) at 00:56:45 (comments of Don Peterson, Special Agent, Minnesota Bureau of Criminal Apprehension).

There is no provision in the Gun Control Act making it a crime for a person to receive or possess a firearm that *never* had a serial number required by federal law. *See* 18 U.S.C. § 922(k) (making it unlawful to transport, ship, or receive, certain firearms which have "had the importer's or manufacturer's serial number removed, obliterated, or altered"). But nothing in this testimony suggests that the Legislature had in mind any other "serial number" than that required by federal law. In short, the history of the legislation suggests that the Legislature intended section 609.667(3) to criminalize the act of receiving or possessing a firearm on which a serial number is required under federal law.

https://www.hillerauction.com/auctions/detail/bw113143, (last visited July 23, 2025) (listing the sale of six pre-1968 firearms that do not include serial numbers—#6 Stevens 820B, 12ga; #7 Winchester 250, .22LR; #8 Savage Fox B, .410 Bore; #15 Unknown Rifle, 300 win mag; #26 Steven, 44cal; #35 FIC unknown model, .410) [opinion attachment]. The State's interpretation of section 609.667(3) would have the unfortunate and unnecessary effect of turning a large group of currently law-abiding Minnesotans, like those who own rifles and other firearms manufactured before 1968 (often family heirlooms) which are not National Firearms Act firearms and lack serial numbers, into unsuspecting criminals.[14] We should exercise caution before criminalizing the conduct of

---

[14] The dissent argues that our interpretation will criminalize a subset of otherwise law-abiding owners of National Firearms Act firearms. We disagree. All owners of National Firearms Act firearms were required to register their firearms in 1934. National Firearms Act, Pub. L. 73-474, § 5(a), 48 Stat. 1236, 1238 (1934). They also had opportunities to register the firearms during amnesty registration periods, including the one that followed the 1968 amendments. Gun Control Act of 1968, Pub. L. No. 90–618, § 207(b), 82 Stat. 1213, 1235–36 (1968). Today, possession of an unregistered National Firearms Act firearm is illegal under federal law. 26 U.S.C. §§ 5841, 5861(d). Because we find that section 609.667(3) applies only to firearms for which a serial number is required under federal law, only possession of firearms currently violating federal serial number requirements is criminalized.

In support of its position, the dissent points to certain categories of firearms like unserviceable weapons, 26 USC § 5845(h), and weapons qualifying as collector curios and relics, 27 C.F.R. § 478.11, possession of which may be illegal under the court's holding. These types of firearms, however, were not exempted from registration under the original 1934 National Firearms Act nor the 1968 amendments, and, thus, previously required serial numbers or to be grandfathered in without them. *See* Pub. L. No. 73-474, §§ 5, 12, 48 Stat. 1236, 1238, 1240 (1934) (explaining that unserviceable firearms or those treated as curiosities did not have to pay the $200 transfer tax, but not exempting them from registration). The dissent similarly points to certain antique firearms. Yet under 26 U.S.C. § 5845(a), (g), qualifying "antique firearms"—those manufactured in or before 1898 that use certain ammunition and firearms using certain ignition systems regardless of manufacture date—are not subject to registration requirements under the National Firearms Act, which means these antique weapons do not require serial numbers under federal law.

21

a large group of Minnesotans who have never understood their behavior to be criminal. *State v. Serbus*, 957 N.W.2d 84, 89 (Minn. 2021) (employing the "consequences of a particular interpretation" canon in conducting post-ambiguity statutory interpretation analysis); *see generally Staples v. United States*, 511 U.S. 600, 620 (1994) (holding that Congress did not intend to eliminate a mens rea requirement for a gun possession crime and observing that "our holding depends critically on our view that if Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, and to subject them to lengthy prison terms, it would have spoken more clearly to that effect").

Finally, we are not persuaded by the dissent's assumption that we need not worry about criminalizing conduct Minnesotans have never understood to be criminal because county attorneys are unlikely to prosecute those individuals. As the dissent readily

---

Other antique weapons which qualify as National Firearms Act firearms were required to be registered with serial numbers in 1968. *See* 27 C.F.R. § 479.25; 26 U.S.C. 5845(a); *see generally* U.S. Dep't of Just. Bureau of Alcohol, Tobacco, Firearms and Explosives, National Firearms Act Handbook 20–21, ch. 2, §§ 2.2, 2.4 (2009) https://www.atf.gov/firearms/national-firearms-act-handbook (describing an opportunity for a person owning an antique weapon to apply to remove it from the purview of the National Firearms Act as a collector's item and advising proper ways to remove a firearm's qualifying characteristic (e.g., elongating the shotgun barrel or removing it altogether)).

If a person owns a non-exempt antique, unserviceable, or collector curio National Firearms Act firearm that is unregistered, it is already unlawful under federal law. Moreover, to the extent any such weapons *were* omitted from federal serial number requirements, they would not require serial numbers under our interpretation of section 609.667. Nothing in our opinion today changes that or, more importantly, makes a person who lawfully possesses a firearm into a person who does not lawfully possess a firearm. The fact that a person may not be able to seek an exemption from the serial number requirements for a firearm that otherwise requires a serial number under federal law because the firearm is contraband is due to a contradiction in federal law. Our decision does not create any additional obstacles.

acknowledges, we have no way to predict this outcome. Prosecutors have broad discretion to make charging decisions, and once we have determined that possessing certain firearms is a criminal act prosecutors are fully within their rights (subject to constitutional limitations) to charge persons in possession with crimes. *See State v. Smith*, 270 N.W.2d 122, 124 (Minn. 1978). We agree that prosecutors should conduct themselves as ministers of justice. But the dissent's suggestion that prosecutors are unlikely to charge some group of Minnesotans who are violating the law would put police and prosecutors in the unenviable position of deciding whether to broadly ignore certain violations of the law. *See generally Olson v. One 1999 Lexus MN License Plate No. 851LDV VIN: JT6HF10U6X0079461*, 924 N.W.2d 594, 615 (Minn. 2019) (stating that the Bill of Rights " 'protects us against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly' " (quoting *United States v. Stevens*, 559 U.S. 460, 480 (2010))).

\*　　\*　　\*

Personally manufactured firearms that are not required to have serial numbers pose real dangers to public safety and the proper regulation of such weapons is an important and complex public policy issue. Many states have regulated ghost guns through the legislative process, yet Minnesota has not acted. Indeed, in 2023, the Legislature had before it, but did not enact, a proposed prohibition on ghost guns.[15] In the end, the final decision on

---

[15]     The bill would have prohibited a person from manufacturing, selling, offering to sell, transferring, purchasing, receiving, possessing, or having under that person's control a ghost gun or an undetectable firearm. S.F. 1723, § 32, 93rd Minn. Leg. 2023. The bill expressly defined "ghost gun" as "a firearm, or a frame or receiver, that lacks a unique

23

whether and how to regulate ghost guns rests with the Legislature. *See State v. Khalil*, 956 N.W.2d 627, 633 (Minn. 2021) (explaining that "legislators are the elected representatives of the people and that legislative bodies are institutionally better positioned than courts to sort out conflicting interests and information surrounding complex public policy issues").

We conclude that section 609.667(3) criminalizes possessing a firearm not identified by a serial number only if federal law requires that the firearm have a serial number. The firearm Vagle possessed is not such a firearm.[16] We reverse the court of appeals and remand to the district court.[17]

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

GAÏTAS, J., took no part in the consideration or decision of this case.

---

serial number engraved or cased in metal or metal alloy on the frame or receiver by a licensed manufacturer or importer under federal law" unless the firearm has been rendered permanently inoperable. *Id.*

[16] Because we conclude that Vagle's charge under section 609.667(3) must be dismissed based on our interpretation of the statute, we have no need to address the argument that the count must be dismissed because it is void for vagueness as applied to Vagle.

[17] A remand to the district court is necessary for proceedings on the other count brought against Vagle for carrying a pistol without a permit, in violation of Minnesota Statutes section 624.714, subdivision 1a. That count was not part of the district court's disposition on the pretrial order that the State appealed.

DISSENT

HUDSON, Chief Justice (dissenting).

This case requires the court to determine the proper meaning of the term "serial number" as used in Minnesota Statutes section 609.667(3) (2024), a statute that prohibits possession of "a firearm that is not identified by a serial number." Because I conclude that the court of appeals correctly interpreted the plain language of the statute in holding that section 609.667(3) applies to all firearms, regardless of whether federal law would require a serial number, I respectfully dissent.

A.

The court argues that section 609.667(3) criminalizes the possession of a firearm that is not identified by a serial number only if federal law requires that the firearm have a serial number. Primarily, the court argues that there is only one reasonable definition of the term "serial number" as used in section 609.667(3).

The proper interpretation of Minnesota Statutes section 609.667 (2024) is a question of law that the court reviews de novo. *State v. Loveless*, 987 N.W.2d 224, 244 (Minn. 2023). In its entirety, the statute reads as follows:

> Whoever commits any of the following acts may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both:
>
> (1) obliterates, removes, changes, or alters the serial number or other identification of a firearm;
>
> (2) receives or possesses a firearm, the serial number or other identification of which has been obliterated, removed, changed, or altered; or

(3) receives or possesses a firearm that is not identified by a serial number.

As used in this section, "serial number or other identification" means the serial number and other information required under United States Code, title 26, section 5842, for the identification of firearms.

Minn. Stat. § 609.667.[1]

When interpreting the meaning of statutes, the judicial role is limited in important ways because "[t]he goal of statutory interpretation is to ascertain and effectuate the intent of the Legislature." *State v. Moore*, 10 N.W.3d 676, 680 (Minn. 2024); *see also* Minn. Stat. § 645.16 (2024).

To that end, interpreting a statute requires first examining the text to see if it is clear and unambiguous. *See Harkins v. Grant Park Ass'n*, 972 N.W.2d 381, 386 (Minn. 2022).

---

[1]    The federal law referenced in this section provides that:

(a) Identification of firearms other than destructive devices
       Each manufacturer and importer and anyone making a firearm shall identify each firearm, other than a destructive device, manufactured, imported, or made by a serial number which may not be readily removed, obliterated, or altered, the name of the manufacturer, importer, or maker, and such other identification as the Secretary may by regulations prescribe.

(b) Firearms without serial number
       Any person who possesses a firearm, other than a destructive device, which does not bear the serial number and other information required by subsection (a) of this section shall identify the firearm with a serial number assigned by the Secretary and any other information the Secretary may by regulations prescribe.

(c) Identification of destructive device
       Any firearm classified as a destructive device shall be identified in such manner as the Secretary may by regulations prescribe.

26 U.S.C. § 5842.

A statute is unambiguous when its language "is susceptible to only one reasonable interpretation." *State v. Culver*, 941 N.W.2d 134, 139 (Minn. 2020).

Conversely, a statute is ambiguous when its language "is subject to more than one reasonable interpretation." *Id.* Determining whether a statute is ambiguous requires "analyz[ing] the statute's text, structure, and punctuation." *Hagen v. Steven Scott Mgmt., Inc.*, 963 N.W.2d 164, 170 (Minn. 2021) (citation omitted) (internal quotation marks omitted). I disagree with the court's holding that section 609.667(3) unambiguously criminalizes the possession of a firearm that is not identified by a serial number only if federal law requires that the firearm have a serial number. Rather, the statute plainly mandates that the serial number requirement applies to all firearms, regardless of the federal registration requirements.

The interpretive clause in section 609.667 specifically identifies and sets off in quotation marks the phrase it purports to define by reference to federal law, which is *not* the standalone phrase "serial number," but rather the compound term "serial number or other identification." Although that compound term is defined, in part, by reference to federal law, the standalone phrase "serial number" is not separately defined, and it would be unreasonable to treat it as such, given the precision with which the interpretive clause identifies the defined term, thereby establishing the scope of its incorporation of federal law. Instead, the plain text of section 609.667 clearly reflects the Legislature's intent to treat the phrases "serial number" and "serial number or other identification" as distinct for the purposes of incorporating reference to federal law.

It is therefore worth reiterating what "serial number or other identification" means in the federal context. The National Firearms Act requires all makers, manufacturers, and importers of National Firearms Act guns to register the firearm in the National Firearms Registration and Transfer Record (NFRTR).[2]  27 C.F.R. § 479.101(a).  The term "make" is defined as "manufacturing . . . , putting together, altering, any combination of these, or otherwise producing a firearm."[3]  26 U.S.C. § 5845(i).

Under the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) regulations, in order to register a National Firearms Act gun, the maker must "engrav[e], cast[], stamp[] (impress[]), or otherwise conspicuously plac[e] . . . on the frame or receiver thereof, an individual serial number" that is created by the maker using unique letters and digits. 27 C.F.R. § 479.102(a)(1), (7); 26 U.S.C. § 5842(a).  He must also include his name and the city and state in which the firearm was made.  27 C.F.R. § 479.102(a)(1).  The regulations further require that the maker engrave, cast, stamp, or place "certain additional information," which shall include "[t]he model" and "[t]he caliber or gauge" of the firearm.

---

[2]  National Firearms Act guns have specific physical characteristics.  Determining whether a gun is a National Firearms Act gun requires looking at, *inter alia*, the barrel length, the gun's caliber, and automatic firing mechanisms.  26 U.S.C. § 5845(a)–(h).  The National Firearms Act also encompasses machineguns, hand grenades, and other destructive devices.  *Id.* at § 5845(b), (f).  A non–National Firearms Act gun that is modified to have National Firearms Act characteristics (i.e., sawing off a shotgun) is brought under the purview of National Firearms Act regulations.  *Id.* at § 5845(a).  The court holds, and I agree, that Vagle's Glock 19 handgun is not a National Firearms Act gun.

[3]  Vagle would qualify as a "maker" of his Glock 19 handgun under this definition. But as addressed in the prior footnote, Vagle's Glock 19 handgun is not a National Firearms Act gun.

*Id.*, § 479.102(a)(2).[4]  Altogether, this information constitutes the "serial number or other

information" required by 26 U.S.C. § 5842, as referenced in section 609.667.[5]

Here, the phrase "[a]s used in this section" in section 609.667's interpretive clause

does nothing to sweep in "serial number" as an additional defined term and thereby expand

the scope of the statute's incorporation of federal law.  Instead, "[a]s used in this section"

is expressly—and singularly—linked to the defined term "serial number or other

identification."  The interpretive clause directs us to search section 609.667 for the phrase

"serial number or other identification" and, where it occurs, look to federal law for the

applicable definition.  As the statute is written, "serial number or other identification"

appears only in subparts one and two.  Minn. Stat. § 609.667.  This means that the

---

[4]    The requirements and process of assigning a serial number and registering a firearm are the same under the Gun Control Act of 1968 as they are under the National Firearms Act.  *Compare* 27 C.F.R. § 478.92, *with* 27 C.F.R. § 479.102(a)(1).  However, the Gun Control Act is applicable only to federal firearm licensees (FFLs), defined as persons "engage[d] in the business of importing, manufacturing, or dealing" firearms or ammunition.  18 U.S.C. § 923(a).  Non-FFL individuals who possess a privately made firearm for personal use are not required to place a serial number on the firearm under the Gun Control Act.  Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652, 24,652–53 (Apr. 26, 2022) (codified at 27 C.F.R. §§ 447, 478, 479).  Because he is not in the business of manufacturing firearms, I agree with the court that Vagle is not subject to the Gun Control Act's serial number requirement.

[5]    To complete the registration process, the maker must submit a form to the ATF that describes the gun's characteristics, the serial number the maker assigned, and the owner's identifying information, along with the payment of a maker tax.  Pub. L. 90-618 § 207(b), 82 Stat. 1213, 1235–36; 27 C.F.R. § 479.62; 26 U.S.C. §§ 5821–22.  The ATF reviews the application, and if approved, the firearm becomes legally registered in the NFRTR under the provided serial number.  Any person seeking to transfer an already-registered National Firearms Act gun to another individual is required to fill out a transfer application and pay a transfer tax, subject to approval by the ATF, but is not required to assign the firearm a new serial number.  27 C.F.R. § 479.84.

interpretive clause has no applicability to subpart three and that section 609.667 unambiguously does not reference federal law to define the term "serial number" in subpart three.

Accordingly, the plain text of section 609.667(1) unambiguously criminalizes obliterating, removing, changing, or altering the serial number, the city and state, the maker's name, the model, the gauge or caliber of the firearm, and any other information as is required to be marked on the frame under the National Firearms Act. Section 609.667(2) criminalizes receiving or possessing a firearm with such required markings that have been altered or removed. And section 609.667(3) criminalizes the receipt or possession of a firearm that does not have a serial number—not a "serial number" as defined under federal law, but rather any serial number, even one that does not necessarily align with federal registration requirements. The plain language of subparts (1) and (2) evinces the Legislature's desire to criminalize alteration of a properly registered gun that already has a serial number engraved as required by the National Firearms Act. Meanwhile, subpart (3) applies broadly as a catch-all provision to criminalize the possession of a nonserialized gun that may otherwise exist outside of the National Firearms Act or Gun Control Act's registration requirements. A non–National Firearms Act, personal-use ghost gun such as Vagle's may fall outside the ambit of federal regulations, but it does fall within the serial number requirement of section 609.667(3).

The court asserts that the phrase "serial number" has a specialized technical meaning. I disagree. The court relies upon *State v. Bradley*, 4 N.W.3d 105, 112 (Minn. 2024), for the proposition that the court should construe the words "serial number"

as having a technical, specialized meaning rather than a plain and ordinary one. *Bradley* is readily distinguishable. In *Bradley*, we interpreted the word "degree" in the context of a criminal statute. *Id.* Specifically, we dealt with statutory degrees of assaultive conduct— i.e., first- through fifth-degree assault. *Id.* There is no debate that there are dozens of statutes throughout the criminal code that make use of the term. *Id.* Moreover, *The American Heritage Dictionary* provides no fewer than six definitions of the word "degree," all with substantially different meanings. *See The American Heritage Dictionary of the English Language* (11th ed. 1982) (defining "degree" alternately as "[r]elative social or official rank," "[o]ne of a series of steps or stages in a process," and "[r]elative condition or extent," among other definitions). Therefore, our holding that "degree" in the criminal conviction-of-a-lesser-offense statute, *see* Minn. Stat. § 609.04, subd. 1(1) (2024), has a technical meaning was a necessary conclusion that enabled the court to winnow down which of the many definitions it was appropriate to apply. *Bradley*, 4 N.W.3d at 113. "Serial number," conversely, has only one ordinary meaning in the dictionary. *See, e.g.*, *Serial number*, *Black's Law Dictionary* 1646 (12th ed. 2024) (listing one definition: "[a] number assigned to a specific thing, esp. a product, to identify it from other things of the same kind"); *The American Heritage Dictionary of the English Language* (11th ed. 1982) (defining "serial" with one definition: "[o]f, forming, or arranged in a series: *serial numbers*").

As another example, take the word "firearm," which is not generally defined within the criminal code and which only has one dictionary definition. *State v. Stone*, 995 N.W.2d 617, 622 (Minn. 2023); *see, e.g.*, *Firearm*, *Black's Law Dictionary* 774 (12th ed. 2024).

We have previously "defined the term 'firearm' based on its plain and ordinary meaning" by turning to dictionary definitions. *Stone*, 995 N.W.2d at 622; *see State v. Haywood*, 886 N.W.2d 485, 490 (Minn. 2016) (defining "firearm" with its ordinary dictionary definition); *State v. Glover*, 952 N.W.2d 190, 193 (Minn. 2020) (same). Here, too, there is no reason to conclude that the Legislature intended the term "serial number," distinct from the set-off words "serial number or other identification," to take on any meaning beyond the ordinary and plain definition.

As such, I would follow our longstanding precedent that nontechnical words and phrases be construed according to their plain and ordinary meanings. *Schneider v. Child.'s Health Care*, 996 N.W.2d 197, 202–03 (Minn. 2023); *see also* Minn. Stat. § 645.08(1) (2024) ("[W]ords and phrases are construed according to rules of grammar and according to their common and approved usage[.]"). This court often consults dictionaries to ascertain the plain meaning of words. *State v. Johnson*, 995 N.W.2d 155, 160 (Minn. 2023). "When the Legislature uses limiting or modifying language in one part of a statute, but omits it in another, we regard that omission as intentional and will not add those same words of limitation or modification to parts of the statute where they were not used." *Gen. Mills, Inc. v. Comm'r of Revenue*, 931 N.W.2d 791, 800 (Minn. 2019). "We do not examine the statutory language in isolation, but rather we interpret the language in context of the statute as a whole." *Schneider*, 996 N.W.2d at 202; *see also State v. Carson*, 902 N.W.2d 441, 445 (Minn. 2017).

I see no infirmity with the Legislature's decision not to expressly define the term "serial number" by statute, as that term has a readily ascertainable and unambiguous plain

D-8

meaning. A serial number for purposes of section 609.667(3) is any number indicating a place in a series and used as a means of identification. *See, e.g.*, *Merriam-Webster's Collegiate Dictionary* 1136 (11th ed. 2003) (defining "serial number" as "a number indicating place in a series and used as a means of identification"); *The American Heritage Dictionary of the English Language* 1589 (4th ed. 2000) (defining "serial number" as "[a] number that is one of a series and is used for identification, as of a machine, weapon, or motor vehicle"); *Serial number*, *Black's Law Dictionary* 1646 (12th ed. 2024) ("A number assigned to a specific thing, esp. a product, to identify it from other things of the same kind."). And although section 609.667(3) does not require us to turn to federal law for a definition, the fact that a maker of a National Firearms Act gun may simply create a serial number out of a unique combination of numbers and digits lends support to the fact that "serial number" has a common-sense, plainly understood meaning that is readily discernible by the average citizen. *See* 27 C.F.R. § 479.102(a)(1) (registration requirements for makers of National Firearms Act guns).

The court argues that under my definition, a generally defined serial number requirement is "disconnected from the tracing function of a serial number intended to enable law enforcement to connect an owner to a firearm" during an investigation. But I agree with the court that Vagle's firearm need not be registered in the federal NFRTR because it is not a National Firearms Act gun. Therefore, even under the court's holding, Vagle's gun would not be registered in any registry or otherwise be traceable by law enforcement, because there is no State mechanism for registration. The vast majority of guns in America are not National Firearms Act guns—and are thus not required to be

registered in the NFRTR. According to ATF records, 8.6 million firearms are registered in the NFRTR, while national surveys conservatively suggest that there are more than 360 million guns currently in circulation in the country.[6] That means a mere two percent of firearms in this country are required to be registered in a centralized federal repository.[7] By any measure, the vast majority of firearms in the country are not registered in any database.

But the lack of a registry does not mean that the statutory imposition of a serial number is a futile endeavor, as the court claims. In promulgating the 2022 amendments to the ATF's firearm regulations, the United States Attorney General recognized the importance of tracing a firearm for purposes of criminal investigations. "Because PMFs [(privately made firearms)] lack serial numbers and other markings from a licensed manufacturer, ATF has found it extremely difficult to successfully complete traces of PMFs." Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg.

---

[6] *See* U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *Firearms Commerce in the United States: Statistical Update 2024*, at 12 (2025); John Berrigan, Deborah Azrael & Matthew Miller, *The Number and Type of Private Firearms in the United States*, 704 Annals Am. Acad. Pol. & Soc. Sci. 70, 70 (2022). In fact, the Brady Handgun Violence Prevention Act of 1993 prohibits the establishment of a national registration system for non–National Firearms Act firearms. *See* Pub. Law 103-159, Nov. 30, 1993, 107 Stat. 1536, 1542.

[7] The Gun Control Act does not establish a centralized registry of guns imported or manufactured by FFLs. Rather, it provides a "decentralized system of recordkeeping allowing ATF to trace a firearm's chain of commerce, from manufacturer or importer to dealer, and to the first retail purchaser of record." Jordan B. Cohen, Cong. Rsch. Serv., IF12057, *Statutory Federal Gun Registry Prohibitions & ATF Record Retention Requirements* 1 (2024). It does *not* connect individual firearm owners to the serial number provided to the ATF by the FFL.

24,652, 24,659 (Apr. 26, 2022).  The court argues that my definition "serves no purpose" because, without a State repository, it would not connect the serial number to the person who engraved it.  However, the Attorney General noted that "[s]uccessful traces of PMFs have been completed in these rare instances primarily because licensees who acquired PMFs sometimes recorded *a serial number that had been voluntarily engraved* by the manufacturer on a commercially produced handgun slide, barrel, or another firearm part." *Id.* (emphasis added).  The PMFs of which the Attorney General speaks would not have a registered serial number in a federal database, but the existence of any serial number is notably still helpful for law enforcement.  Although applying a serial number would not be voluntary under Minnesota Statutes section 609.667(3), it would serve the same important function of allowing law enforcement to trace firearms as they move through the stream of commerce or if they are used in the commission of a crime, even if not connected to a State-level central ownership repository.

The fact that section 609.667(3) uses only the term "serial number" and does not include the words "or other information" indicates that compliance with the National Firearms Act or Gun Control Act's registration requirements is not necessary for a gun to be criminalized under this section.  Rather, it showcases the Legislature's intent to create *some* mechanism for tracing or otherwise identifying a firearm despite the lack of a State registry.

Vagle raises an additional argument—namely that section 609.667(3) does not adequately define the conduct that it seeks to prohibit because (1) it provides no definition of "serial number," and (2) it does not establish what process gun owners ought to follow

D-11

to obtain a serial number and thereby bring themselves into compliance with the law. While it is true that "[w]hen the state imposes criminal penalties, . . . citizens are constitutionally guaranteed that the offense be defined in the statute with sufficient clarity to permit them to understand the nature of the conduct prohibited," *State v. Newstrom*, 371 N.W.2d 525, 532 (Minn. 1985), we have never required—nor does Vagle cite to any authority suggesting—that to pass constitutional muster, a criminal statute must *also* specify how a person can bring themselves into compliance with the prohibition. The plain language of section 609.667(3) indicates that a person must somehow engrave or otherwise place a serial number composed of a unique combination of numbers and digits on the frame of the firearm. And because Minnesota does not have a centralized ownership registry or licensing scheme, I do not argue that any action must be taken beyond that.

B.

To reiterate, the plain language of a statute controls when the statute is unambiguous. *Loveless*, 987 N.W.2d at 250. Moreover, the Legislature has directed that "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn. Stat. § 645.16. "When a statute is unambiguous, our 'role is to enforce the language of the statute and not explore the spirit or purpose of the law.' " *Hagen*, 963 N.W.2d at 169 (quoting *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012)). Importantly, "the proper inquiry under our current method for determining whether a statute is ambiguous" is not whether "it is unreasonable to think that the Legislature would have enacted, and the Governor would have signed, a

statute." *Wocelka v. State*, 9 N.W.3d 390, 397–98 (Minn. 2024). Then, where the language of a statute is unambiguous, we will disregard arguments that are "not really textual in character" but instead amount to "argu[ments] that the Legislature could not have intended what the words say." *State v. Khalil*, 956 N.W.2d 627, 637 (Minn. 2021).

The court contends that my interpretation of the statute is incorrect after applying a pre-ambiguity plain language analysis, but it then turns to post-ambiguity canons of construction to support its holding. But the court "ignores the fact that the purpose of construction is to remove ambiguity and not to make it." *Naeseth v. Vill. of Hibbing*, 242 N.W. 6, 7 (Minn. 1932). By turning to the legislative history, the court seeks to inject ambiguity into the statute although it has already determined that my interpretation is "not required." Notably, the court does not contend that either the term "serial number" or the words "other identification" are ambiguous. While I take no position on whether the legislative history is instructive on this issue, I note that reviewing legislative history and floor statements in order to define those terms should occur only upon a finding that the language is ambiguous. *See In re Welfare of J.B.*, 782 N.W.2d 535, 545 (Minn. 2010) ("Resort to legislative history to interpret a statute is generally appropriate only where the statute itself is ambiguous."); *State v. Fugalli*, 967 N.W.2d 74, 79 (Minn. 2021) ("We do not need to resort to legislative history when a statute is unambiguous."); *State v. Struzyk*, 869 N.W.2d 280, 288 n.5 (Minn. 2015) ("We will not re-write an unambiguous statute to conform to what may be the Legislature's intent."); *see also* Minn. Stat. § 645.16(7) ("When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters[,] . . . the contemporaneous legislative

D-13

history[.]"). Thus, I cannot countenance the court's reliance on extratextual sources to interpret the statute's plain meaning, even if those sources support its holding.

The court's decision today raises additional questions that, on the record, the court cannot address. Specifically, under the court's holding, there remains a subset of otherwise law-abiding owners of National Firearms Act firearms who may be wondering how they can bring themselves into compliance with the statute's serial number requirement for guns that are required to be registered under federal law. As the court acknowledges, generally, guns manufactured prior to 1968 are grandfathered in as "registered" under the National Firearms Act. 26 U.S.C. § 5841(d). However, there remains a long list of pre-1968 guns that may be unregistered but are still subject to the National Firearms Act. For example, a National Firearms Act firearm may be rendered unserviceable by welding the chamber of the barrel closed. But unserviceable National Firearms Act guns are still subject to the provisions of the National Firearms Act. 26 U.S.C. § 5845(h). So, too, are certain antique firearms manufactured between 1898 and 1968, 27 C.F.R. § 478.11 (defining "[a]ntique firearm"), and guns that qualify as collectors' curios or relics, 27 C.F.R. § 478.26. *See* U.S. Dep't of Just. Bureau of Alcohol, Tobacco, Firearms and Explosives, National Firearms Act Handbook 20, ch. 2, §§ 2.2, 2.3 (2009) (explaining the National Firearms Act's applicability to certain types of guns); *United States v. Smith*, 477 F.2d 399, 400 (8th Cir. 1973) (analyzing the applicability of the National Firearms Act to a gun with a barrel that was welded closed).

Under the court's holding, possession of a gun with National Firearms Act characteristics but without a serial number *could* still be illegal under section 609.667(3).

D-14

When a National Firearms Act gun is illegal under state law, a person may be precluded from registering the gun with the federal government and is thus unable to bring it into legal compliance. *See* 28 U.S.C. § 5812(a) ("Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law."); *United States v. Djelaj*, 842 F. Supp. 278, 280 (E.D. Mich. 1994) ("Defendants correctly point out that if they had registered their Molotov cocktails pursuant to [the National Firearms Act], their registration applications would have been denied on the ground that the weapons were in violation of Michigan law."); *United States v. Dalton*, 960 F.2d 121, 123 (10th Cir. 1992) (agreeing with the defendant's contention "that the gravamen of a section 5861 [National Firearms Act] violation is the possession and transfer of an *unregistered* gun, and that it violates fundamental fairness to convict him for failing to do an act which everyone agrees he could not perform"). The court's caveat that its decision today "does not create any additional obstacles" does not assuage my concern about the difficulties gun owners may face in navigating the legal vagaries of whether their firearm is required to be registered under federal law.

Nevertheless, I note the State's reassurances at oral argument that ordinary citizens possessing potentially illegal, pre-1968 firearms could rely on the significant prosecutorial discretion in the State's power to bring criminal charges under section 609.667(3). *See* Am. Bar Ass'n, *Criminal Justice Standards for the Prosecution Function* 3-1.2(b) (4th ed. 2017) ("The prosecutor serves the public interest and should act with integrity and balanced judgment to increase public safety . . . by exercising discretion to not pursue criminal charges in appropriate circumstances."); *see also State v. Bakken*, 883 N.W.2d 264, 271–72

(Minn. 2016) (observing that, in some circumstances, application of a statute "may counsel the cautious exercise of prosecutorial discretion" and "harsh results of the statute can be modified by the charging authorities" (citation omitted) (internal quotation marks omitted)). While I convey to the public what the State represented to us at oral argument, I express no opinion on the State's future prosecutorial policies in applying section 609.667(3) to possessors of firearms that are required to be registered under federal law.

Consequently, I acknowledge that there are substantial public policy considerations that might weigh in favor of a different statute. But where the plain language of a statute leads to an outcome that the Legislature "could not have intended," the appropriate remedy is for the court to direct such policy concerns to the Legislature, because courts "must read this state's laws as they are, not as some argue they should be." *Carson*, 902 N.W.2d at 446 (citation omitted) (internal quotation marks omitted). Judicial review furnishes no authority "to speculate or suppose that the legislature blundered or was laboring under a mistake when it passed [legislation]." *Cone v. Nimocks*, 80 N.W. 1056, 1058 (Minn. 1899) (Canty, J., concurring in part and dissenting in part).

Because I conclude that the plain and unambiguous language of section 609.667(3) does not incorporate federal law and therefore requires all firearms to have a serial number, I respectfully dissent.


PROCACCINI, Justice (dissenting).

I join in the dissent of Chief Justice Hudson.


**DEPARTMENT OF NATURAL RESOURCES**

# Confiscated hunting and fishing equipment auctions to be held Aug. 27 and Oct. 1

The DNR will be holding two confiscated equipment auctions this fall. The auctions, which will be held online at www.hillerauction.com, are scheduled for Saturday, Aug. 27 and Saturday, Oct. 1.

A list of items being offered for sale will be available approximately one month prior to each individual auction date at www.hillerauction.com. The list will include the DNR Enforcement seizure receipt number if applicable. This preliminary list is subject to change by the DNR.

The bidding catalog for each auction will be available online on Aug. 24 and on Sept. 28. This will include a written description and photos of each item. Onsite inspection is available Friday, Aug. 26 and Friday, Sept. 30 from 10 a.m. to 4 p.m. at Hiller Auction Service, 10785 261st Avenue, Zimmerman, MN.

The first auction will begin closing at 10 a.m. on Aug. 27, with a staggered ending – one item ending per minute. Bidding will extend on that item if there is a bid in the final three minutes and extend as many times as needed until there are no bids for three minutes. Extended bidding does not affect the ending times of other items. The second auction will begin closing at 10 a.m. on Oct. 1, with the same format.

Winning bidders will be sent an invoice after the completion of the auction. Items must be picked up at Hiller Auction Service, 10785 261st Avenue, Zimmerman, MN.

**Please note**: Bidders who purchase a firearm will be required to pass a Federal Firearms background check in person when paying for and picking up the firearm(s) at the auction location.

Additional information about auction procedures is available on the Hiller Auction website.



## January Firearms

Bidding Starts Friday January 19th and ends Monday January 22nd. 10% buyers premium.  No sales tax! Inspection will be Saturday January 20th from 9am to Noon and Monday January 22nd 9am to 5pm. Load out will be Tuesday January 23rd from 9am to 6pm and Wednesday January 24th from 9am to 3pm. No Shipping!!! All buyers will have to pass a NICS background check (dealers bring a copy of your FFL). The persons name that is on the account will be the one required to do the background check. Out of state buyers you can not bid on firearms that are listed as Permit Required.

🕐 Jan 19 @ 8:00am CST (Start)
🔔 **Jan 22 @ 5:00pm CST (End)**
📅 Add to Calendar

📍 10785 261st AVE NW, Zimmerman , MN 55398, US (map)

On-Line Firearm Sale

**BID ONLINE NOW!**



View All Photos



#6 • Stevens 820B, 12ga, SN XXX

SOLD

High bid $120

| SOLD |
| --- |
| $120 |

DETAILS    CONTACT    TERMS    BIDS

2 3/4, bluing is worn, scuffs & scrapes



PREV. ITEM

#7 • Winchester 250, .22LR, SN XXXX

SOLD

High bid $320

**SOLD**
**$320**

DETAILS    CONTACT    TERMS    BIDS

Bushnell 4X20, bluing is worn, scuffs & scrapes



PREV. ITEM

#8 • Savage Fox B, .410 Bore, SN XXXXX

SOLD

High bid $825

**SOLD**
**$825**

DETAILS    CONTACT    TERMS    BIDS

3", Side by Side, bluing is worn, scuffs & scrapes



**#15 • Unknown Rifle, 300 win mag, SN XXX**

SOLD

High bid $656

SOLD
$656

DETAILS    CONTACT    TERMS    BIDS

Balsix B scope

PREV. ITEM



**#26 • Steven, 44cal, SN XXX**

SOLD

High bid $110

SOLD
$110

DETAILS    CONTACT    TERMS    BIDS

Rust all around

PREV. ITEM



#35 • FIC unknown model, .410, SN XXXX

SOLD

High bid $385

SOLD
$385

DETAILS   CONTACT   TERMS   BIDS

3", Side by Side, bluing is worn, scuffs & scrapes

Last visited June 10, 2025.